**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**William C. LIEB, Jr., doing business as AAA Exterminators, Appellee.**

No. 8454.

United States Court of Appeals
Tenth Circuit.

Sept. 14, 1966.

---

William Fauver, Washington, D. C. (Charles Donahue, Bessie Margolin and Robert E. Nagle, Washington, D. C., with him on brief), for appellant.

Frank D. McSherry, McAlester, Okl., for appellee.

Before MURRAH, Chief Judge and HICKEY and JONES *, Circuit Judges.

MURRAH, Chief Judge.

This is a conventional wage and hour case in which the trial court found from creditable evidence that the employer-

---

* Of the Fifth Circuit, sitting by designation.

appellee is engaged in the pest control business with four places of business in Oklahoma and three in Texas; that he maintains an office in McAlester, Oklahoma, where employees "as a regular part of their duties receive daily reports, service contracts, payments on account and other records and correspondence from the other places of business, including those in Texas, and similarly prepare and mail or otherwise send to other places of business, including those in Texas, service tickets, service contracts, accounts receivable, records, parts and other records and correspondence."

The court held these activities constituted engaging in commerce within the meaning of the Fair Labor Standards Act and that the employees so engaged were not exempt from the minimum wage, overtime, record keeping requirements of § 11(c) of the Act, i. e. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended; 29 U.S.C. § 201 et seq.; and see 29 C.F.R. 1516.2; that no record was kept of the hours worked and the hourly wage paid any employee engaged in activities subject to the Act. The court accordingly concluded that the Secretary was entitled to a § 15(a) conventional injunctive decree but denied the claim for *minimum wage and overtime compensation* apparently for insufficiency of the proof to support the claim of the twenty-four employees in whose behalf the suit was brought.

The employer does not now seem to contend that the described activities are not subject to the Act. Indeed, as the trial court found, he has now undertaken to comply with the requirements of the Act with respect to the employees found to be covered thereby. In any event, no appeal is taken from the injunctive decree based on coverage. And see Wirtz v. First National Bank & Trust Company, et al., July Term, 1966, 10 Cir., 365 F.2d 641.

The established rule in cases of this kind is that "the burden rests upon the employee to show that he performed overtime work for which he was not properly compensated and to show the extent and amount of such work as a matter of just and reasonable inference. When the employee proves that he did in fact perform overtime work for which he was not properly compensated and produces sufficient evidence to show the extent and amount of such work as a matter of just and reasonable inference, the burden shifts to the employer to come forward with evidence of the precise amount of the work performed or with evidence to negate the reasonableness of the inference to be drawn from the evidence of the employee. And if the employer fails to produce such evidence, it is the duty of the court to enter judgment for the employee, even though the amount be only a reasonable approximation." Mitchell v. Caldwell, 10 Cir., 249 F.2d 10, 11, and cases cited.

The unpaid minimum wages and overtime compensation for the twenty-four employees were computed by a wage and hour investigator who testified that in arriving at the hourly rate paid an employee, he took the basic work week of an employee as being forty hours and from records for that and preceding weeks determined the hourly rate of each individual employee, i. e. whether $1 per hour or $1.15 per hour. He computed unpaid minimum wages due each employee based upon the difference between the rate paid and the statutory minimum rate applicable at the time the wages were paid. If the payroll record showed that a particular employee was paid in excess of his payroll rate for a forty hour week, the investigator concluded that employee had worked in excess of the forty hours and was, therefore, entitled to time-and-one-half for the overtime worked. Thus, if the payroll record showed a particular employee had been paid $44 for a week on the basis of $1 per hour, four hours were computed as overtime. If the payroll rate was $1.15 per hour, the overtime was determined by the same formula with reference to

the prevailing statutory minimum.[1] An Exhibit reflecting the exact amount of back wages claimed including unpaid minimum wages and overtime compensation for each employee in whose behalf the suit was brought was admitted into evidence.

■■ We think this evidence entirely sufficient to make a prima facie case for each of the employees listed in the Exhibit and to cast on the employer the burden of coming forward with evidence of the precise amount of the work performed by each employee at the risk of a judgment for the amount shown. The only contrary evidence was the testimony of the office manager-wife of the employer who testified that the normal work week for forty hours—eight hours a day—but that the employees were free to take time off without deductions to attend to personal affairs so long as the privilege was not abused. There was no estimate, however, of the time consumed by any employee, and we do not believe this generalized statement sufficient to negate the more precise computations in the Exhibit.

■ The proof on behalf of the employees is not sufficiently clear to show whether all of the twenty-four listed were actually employed in commerce or in the production of goods for commerce, and, of course, the coverage of each must rest on its own facts. There was some intimation in the record and a statement in appellee's brief to the effect that only five of the employees in the office at McAlester were ultimately claimed to be covered by the Act. The court made no determination with respect to the number of employees actually covered and included in its record keeping injunctive decree. The proceedings were abruptly concluded when the judge announced that on the basis of the testimony he was not disposed to assess the employer for unpaid minimum wages or overtime compensation but that he would entertain any further evidence on "other aspects" of the case.

In this posture of the case we do not attempt to determine the number of employees subject to the Act, nor do we direct judgment in favor of any of those held subject to it. We decide only that the Secretary made a prima facie case in behalf of all the employees in whose behalf the suit was brought and that the employer's evidence was insufficient to overcome it. The case is accordingly reversed and remanded to allow the court to enter a judgment based on proof of coverage of each designated employee and for the amount shown in the Exhibit in the absence of more precise proof concerning the amount of work actually performed by such employees.

1. The testimony of this point was as follows: "Q. Have you computed the hourly rate that each employee was paid? A. Yes, sir. Q. Could you explain to us, please, sir, how you arrived at the hourly rate? A. Yes, sir, I can. I took the basic work week of the office employees as being forty hours and from the records that they had kept of the weekly pay, I could determine whether or not the hourly rate of the individual employees was a $1.00 or a $1.15. Using this basis, I could determine or reconstruct the number of hours worked in each week. Q. And regarding overtime hours, that is hours worked in excess of forty in a week, did you make any computations regarding overtime hours? A. Yes, I did. Q. Could you explain for us how you did that? A. In weeks in which an employee was paid $1.00 an hour, and was paid more than $40.00, I concluded that, that employee had actually worked more than forty hours in a work week. There are some cases where forty four dollars was paid to employees, being paid at $1.00 an hour, and I concluded that they worked forty four hours in that particular week. Q. And you made computations for additional sums of money due these employees at time and a half? A. Yes, I did. Q. What other factors did you take? A. I deleted holiday hours that they were paid for, and I believe that's all, as *for* as anything else other than what I actually got from their records. Q. Mr. Pearce, on the basis of your computations, using the information, using the different records as you have, would you testify please sir, as to the amount of money you have found due to each individual during the period covered by your investigation? A. Yes, sir * * *."