384 F.2d 767
 C. C. BLEDSOE and Emmett Marcum, as Individuals and d/b/a
Oklahoma Auction Yard, a Partnership, Appellants,
v.
W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Appellee.
 No. 9401.
 United States Court of Appeals Tenth Circuit.
 Oct. 27, 1967.
 
 Robert P. Kelly, Pawhuska, Okl. (Bruce W. Gambill, Pawhuska, Okl., on the brief), for appellants.
 Robert E. Nagle, Atty., Dept. of Labor, Washington, D.C. (Charles Donahue, Sol. of Labor, Bessie Margolin, Associate Sol., and Allen H. Sachsel, Atty., Dept. of Labor, Washington, D.C., on the brief), for appellee.
 Before PICKETT, HILL and HICKEY, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 The case is here on appeal for the second time. Upon the first appeal, which was by the Secretary, the case was remanded to the trial court for further proceedings. Wirtz v. Bledsoe, 10 Cir., 365 F.2d 277. Those further proceedings resulted in a judgment in favor of the Secretary and that judgment is now appealed from.
 
 
 2
 The action was instituted by the Secretary of Labor under Section 17 of the Fair Labor Standards Act, 29 U.S.C. 201 et seq., on November 20, 1964. The complaint alleged that the appellants had violated the overtime wage provisions of the Act and had failed to keep adequate records as required by the Act. The appellants are co-partners, doing business as Oklahoma Auction Yard at Hominy, Oklahoma; the Auction Yard facilities are leased to livestock auction companies who sell livestock at auctions. Appellants' employees receive, sort, feed, care for and load cattle being sold at these auctions, some of which are regularly shipped to out-of-state designations. The action involved five employees, four of which were employed as yardmen and for whom defendants had kept records of time worked and payrolls. The fifth employee, Woodrow Linville, lived on appellants' premises in a house rented from appellants, and worked as yard foreman at a monthly salary of $350.00. Hours worked by Linville were not recorded in the company books and no additional compensation was paid Linville if he worked more than a forty hour week. At the first trial, the trial court held that the appellants were covered by the Act, but that as the appellants did not have knowledge of the employees working overtime, and as Woodrow Linville was employed in an executive capacity and, therefore, exempt, they had not violated the Act. This court on appeal held that Linville was not entitled to an executive exemption, and that it was no defense that overtime work was performed without the appellants' knowledge and contrary to their express instructions. The action was, therefore, remanded to the district court for further proceedings.
 
 
 3
 Upon retrial the district court entered judgment against appellants in the amount of $1,220.35 for wages owed the five employees[1] and issued an injunction against future violations by appellants. On this appeal it is claimed that the district court's determination of the number of hours worked by Woodrow Linville is erroneous; that the court erred in the manner in which it applied the 14-work week overtime exemption; and that the court abused its discretion by enjoining future violations. In addition, appellants claim that their employees are not within the coverage of the Act.
 
 
 4
 In the initial complaint filed by the Secretary it was alleged that the employees of appellants are regularly engaged in interstate commerce and the production of goods for interstate commerce as defined by the Act and, therefore, the appellants were covered by the Act. This allegation was denied in appellant's answer. The trial court at the first trial found that the appellants were covered by the Act even though they had not violated the provisions of the Act. This finding of coverage was not challenged by appellants, then appellees, upon the first appeal to this court. The trial court found that since the issue of coverage was not raised in the appeal or in the retrial of the case before the trial court it would adopt its findings of fact and conclusions of law from the first trial on these matters. On this appeal, appellants raise for the first time the argument that as a matter of law they are not covered by the provisions of the Fair Labor Standards Act. Appellee claims that this court does not need to consider the issue of coverage of the Act on its merits, more particularly, that the appellants are estopped from arguing this point because they failed to raise the point during the first appeal, citing Sun Co. v. Vinton Petroleum Co., 5 Cir., 248 F. 623, cert. denied 247 U.S. 514, 38 S.Ct. 580, 62 L.Ed. 1244. However, coverage under the Fair Labor Standards Act by engagement in interstate commerce is more than a substantive issue in the trial of this cause of action. Jurisdiction in the Federal courts depends solely upon a finding of engagement in interstate commerce and no diversity or jurisdictional amount need be shown. Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101; Bracey v. Luray, D.C., 49 F.Supp. 821; Gustafson v. Fred Wolferman, Inc., D.C., 6 F.R.D. 503, Cf. Pure Oil Co. v. Puritan Oil Co., 2 Cir., 127 F.2d 6. See also Bank of Utah v. Commercial Security Bnak, 10 Cir., 369 F.2d 19. The question of whether the court has jurisdiction over the subject matter of a cause of action has primary importance and can be raised at any time even on the court's own motion. Black & Yates v. Mahogany Ass'n, 3 Cir., 129 F.2d 227, 148 A.L.R. 841; see also McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173; Kern v. Standard Oil Co., 8 Cir., 228 F.2d 699. Therefore, since the issue of whether the defendants are engaged in interstate commerce so that they are covered by the Fair Labor Standards Act raises a jurisdictional issue it will be considered by this court on this appeal even though not raised on the first appeal.
 
 
 5
 On the merits of the issue of coverage under the Fair Labor Standards Act appellants argue that their activity is purely local in nature and that they do not engage in buying or selling of the cattle but solely lease the facilities to commission companies. This argument, however, focuses on the wrong activities. It is clear that for determining coverage under the Fair Labor Standards Act the court examines the employee's connection with interstate commerce rather than the employer's. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243. The employees in this case receive, sort, feed, care for and load cattle being sold at the auction, some of which are regularly shipped in interstate commerce. Sections 6 and 7 of the Fair Labor Standards Act, 29 U.S.C.A. 206, 207, apply to employees who are 'engaged in commerce or in the production of goods for commerce.' Produced is defined in 29 U.S.C.A. 203(j) as 'produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, * * * handling, transporting, or in any other manner working on such goods, * * *.' The employees here clearly 'handled' goods, i.e., cattle, which moved in interstate commerce and thus appellants are covered by the provisions of the Fair Labor Standards Act. Mitchell v. Pidcock, 5 Cir., 299 F.2d 281; Walling v. Friend, 8 Cir., 156 F.2d 429. Appellants rely principally on two cases to support their argument that they are not covered by the Act. Hopkins v. United States, 171 U.S. 578, 19 S.Ct. 40, 43 L.Ed. 290, and Mitchell v. Moore, 6 Cir., 241 F.2d 249. Neither of these cases is applicable.[2]
 
 
 6
 Appellants next urge that the trial court erroneously denied them the statutory exemption of 14 workweeks for the part of each of the years selected by them. During the years in question the Fair Labor Standards Act, 29 U.S.C. 207(c), gave employers in appellants' business classification a yearly fourteen week exemption from the Act.[3] Supplementing this statute, the Secretary promulgated a regulation set out in 29 C.F.R. 516.13, which required any employer claiming such exemption to note upon his records the beginning and end of every such week claimed and to further post a notice informing the employees of the same. Appellants did not comply with this regulation. After so determining, the trial court followed the practice of the Secretary[4] by applying the exemption to the first fourteen weeks for which overtime was not paid.
 
 
 7
 In the instant situation appellee argues that the practice as set out by the Secretary was necessary for orderly application of the Act and that if such a practice were not followed employees would have had no way of knowing when they were being paid in accordance with the Act or when their right of action for recovering underpayments commenced. Similarly, the Wage and Hour Division, in making periodic inspections of employer's records, would have been unable either to determine the period of an employer's non-compliance or to identify the particular employees who had been underpaid. These are sound reasons for having such a policy. It is difficult for us to understand why appellants even raise this point because our acceptance of their argument in this regard would be detrimental to them. We do not propose to prolong this opinion by detailed mathematical computations but as pointed out by appellee this theory would increase appellants' obligation to Linville from $916.69 to $1,155.97 and reduce appellants' obligation to the other four employees only from $180.90 to $10.10.
 
 
 8
 We do not believe that the regulation or the practice followed by the Secretary were unreasonable or detrimental to employers operating under the Act. To the contrary, we believe them to have been reasonable administrative requirements under the Act.
 
 
 9
 Appellants' third argument is that the trial court's determination of the number of hours worked by Woodrow Linville is clearly erroneous. No records were available as to the amount of time which Woodrow Linville spent working. Appellants claim that Mr. Linville himself was charged with keeping his time records and was told not to work more than forty hours per week. However, the duty to keep records rests solely with the employer and failure to comply with this obligation to keep records shifts to the employer the burden of specifically and expressly rebutting the reasonable inferences drawn from the employee's evidence as to the amount of time spent working. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515; Wirtz v. Lieb, 10 Cir., 366 F.2d 412; Wirtz v. McClure, 10 Cir., 333 F.2d 45; Mitchell v. Caldwell, 10 Cir., 249 F.2d 10. Linville testified that he generally worked 7 days a week and was subject to being called at irregular times. In response to inquiry as to the average number of hours he would put in for the entire year Linville estimated that he spent an average of 70 hours per week working. Appellants do not have any specific evidence to rebut the number of hours that Mr. Linville worked. They base their argument primarily on the assertion that theirs was a seasonable business and that during the slack portion of the year Mr. Linville could not possibly have spent sufficient hours working to bring the yearly total to a 70 hour average. Testimony of this character falls far short of the 'accurate estimates' referred to by the Supreme Court in the Mt. Clemens case and clearly did not require the district court to reject 'reasonable inferences * * * from the employee's evidence as to the amount of time spent.' Mt. Clemens, 328 U.S. at 693, 66 S.Ct. at 1195.
 
 
 10
 Appellants' final argument is that the trial court's granting of an injunction was erroneous. The trial court in its findings of fact found that 'The defendant Emmett Marcum was first investigated by the Wage and Hour and Public Contracts Divisions, United States Department of Labor, in 1957 and advised of the requirements of the aforesaid Act at that time. Irrespective of this advice, the defendants have continued to violate the statute until the time of trial on January 10, 1967.' Also from the record it is evident that the trial court was concerned about testimony of the present foreman that he worked during the seasonal period 60 hours per week but was not granted any extra compensation for this overtime. The trial court has broad discretion to fashion its decree according to the circumstances of each case. Buckley v. Wirtz, 10 Cir., 326 F.2d 838. This court has recently held in Triple 'AAA' Co. v. Wirtz, 378 F.2d 884, 'an injunction restraining future violations of the Act is not punishment for past violations, but to prevent future violations in the public interest. Because the employer's business operations are of a continuing nature, and considering the history of the employer's relations with the Department of Labor, we conclude that the injunction reveals no abuse of the trial court's discretion.' We feel the same reasoning and principles apply to the present case and the injunction issued by the trial court against defendants for future violations of the Act does not abuse the trial court's discretion in fashioning its decree.
 
 
 11
 Affirmed.
 
 
 
 [1]
 Finding of Fact number 6 was:
 'The defendants have underpaid their employees under the Act in the following amounts:
 Ralph Robinson $21.96
Louis Linville 50.87
William Dean Linville 94.94
Woodrow Linville 1,039.45
William Wilson Linville 13.13
 ----------
 Total $1,220.35"
 
 
 [2]
 Whatever validity Hopkins v. United States has today it is clear that the court there was considering the actions of commission merchants, who furnished facilities for sales, not the employees who were engaged in the actual handling of the cattle passing in interstate commerce. Mitchell v. Moore is also distinguishable in that 'production' there concerned production of livestock feed, the relationship being that the feed was then fed to cattle who moved in interstate commerce. This relationship is much more indirect than the relationship in the instant case. The handling of cattle pursuant to auction sales for shipment to out of state buyers is a necessary element in the movement of cattle and livestock commerce
 
 
 [3]
 This exemption was eliminated, effective February 1, 1967, by the Fair Labor Standards Amendments of 1966 (80 Stat. 830), and replaced by and exemptive provision for certain industries found by the Secretary to be of a seasonal nature
 
 
 [4]
 This policy was announced by the Secretary in Interpretive Bulletin 14, P24, issued August 21, 1939, as follows: 'Where the employees work overtime for more than fourteen work weeks, the first fourteen work weeks in which overtime is worked and for which they do not receive overtime compensation at the regular pay periods will be deemed to have been claimed by the employer under the exemption.'