James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

Lum HUMPHRIES, doing business as Wagoner Radio Company, Defendant-Appellant.

No. 71–1019.

United States Court of Appeals, Tenth Circuit.

Feb. 7, 1972.

---

Stanley H. Sidicane, Alexandria, Va., for defendant-appellant.

Caren Ann Clauss, Atty., U. S. Dept. of Labor, Washington, D. C. (Peter G. Nash, Sol. of Labor, Bessie Margolin, Associate Sol., and Helen W. Judd, Atty., U. S. Dept. of Labor, Washington, D. C., with her on the brief), for appellee.

Before PHILLIPS, MURRAH and HILL, Circuit Judges.

MURRAH, Circuit Judge.

The Secretary of Labor brought this action pursuant to Section 17 of the Fair Labor Standards Act [1] to enjoin the defendant, Lum Humphries, doing business as the Wagoner Radio Company, from violating the Act's minimum wage, overtime, and recordkeeping requirements,[2] and to restrain him from continuing to withhold unpaid wages due under the Act to certain former employees. Upon trial the court entered judgment in favor of the Secretary. We think all the issues raised on this appeal are without merit and the judgment must be affirmed.

Wagoner Radio Company (Wagoner) operates radio station KWLG in Wagoner, Oklahoma. Gene and James Humphries, the defendant's sons, are the day-to-day managers of the station. Pursuant to inquiry by the Department of Labor, Gene Humphries, informed William H. Smith, a compliance officer with the Department, that Wagoner's wage and hour records were available for examination in his office. Upon examination Smith discovered that the only available records consisted of a "check register" and "spotty" time cards. Because of the inadequacy of these records Smith interviewed former employees of Wagoner. Based on these interviews and the available records he then prepared "wage transcription and computation sheets" summarizing all the information he had as to hours worked and to wages paid, and setting forth an estimate of the amount of unpaid wages due each employee. This investigation indicated substantial violations of the Act with respect to virtually every person employed by Wagoner during the prior two-year period and moved the Secretary to bring this suit.

The Secretary's Complaint alleged coverage under the Act and continual violation of its minimum wage, overtime,[3] and recordkeeping provisions. Coverage was not denied in the Answer and was appropriately admitted in the court's pretrial order. See United States for Use of "Automatic" Sprinkler Corp. v. Merritt-Chapman & Scott Corp., 305 F.2d 121, 123 (3d Cir. 1962); Fed. R.Civ.P. 8(d), 28 U.S.C. No objections or motions to amend the pretrial order were ever made by either party. It, therefore, measures the dimensions of the lawsuit, both in the trial court and on appeal. Carlock v. National Co-operative Refinery Association, 424 F.2d 148, 150 (10th Cir. 1970); Davis v. Cities Service Oil Co., 420 F.2d 1278, 1279 (10th Cir. 1970).

The pretrial order also set forth the period when the violations were claimed to have occurred, the employees for which unpaid wages were sought,

---

1. 29 U.S.C. § 201 et seq

2. See 29 U.S.C. §§ 206(a) (1), 207(a) (1), 211(c) and 215(a) (2), (5).

3. Because of the exemption allowed by 29 U.S.C. § 213(b) (9), the Secretary made no claim of overtime violations with respect to employees who acted as radio announcers or engineers, and the trial court's finding of such violations was limited to an employee who did office work.

the dates of their employment, and the total amount of wages claimed to be due. Wagoner now claims for the first time that this material was *improperly* included in the pretrial order because it did not appear in the pleadings. But again counsel does not seem to apprehend that the manifest purpose and effect of the order was to state undisputed facts and to define the triable factual and legal issues. See Fed.R.Civ.P. 16, 28 U.S.C. This it did—succinctly, concisely and commendably. No complaint of it can be made here.

On trial, eight of Wagoner's former employees testified substantially in support of the issues defined in the pretrial order concerning their respective wages and hours of employment. Compliance Officer Smith testified concerning his investigation, and the computation sheets which he had prepared were accepted in evidence over defendant's objection. The court admitted these documents not as direct evidence of the factors as to which the employees had testified, but only as a "helpful summary or chart." The Secretary also subpoenaed Gene Humphries *duces tecum,* to produce all of Wagoner's time and pay records. Humphries testified, but did not present the records, claiming that he had not been served with the subpoena until the day of the trial and was not fully aware of its contents. Wagoner presented no evidence and the court invited counsel for both parties to submit proposed findings of fact and *conclusions of law within ten days* "if they desired." Counsel for the defendant requested that submission of these findings be delayed until after a trial transcript was available for use in their preparation. The court denied this request, stating that it did not feel a transcript would be of any help in the preparation of findings. Whereupon, defense counsel submitted proposed findings and conclusions under protest.

■ It is, to be sure, good practice and effective advocacy to submit proposed findings and conclusions when requested to do so. And it is prudent to receive them, especially in complicated cases. They serve as a useful aid to the trial court's understanding of each party's theory of the lawsuit based upon their respective versions of the law and facts. There is nothing in the rules of procedure, however, requiring their submission, and it is certainly not error for the trial court to proceed without them or to refuse to postpone their submission until after a transcript has been prepared. We must ultimately judge the correctness of the findings and conclusions on the basis of the record, not on the mechanics of their submission.

Subsequent to submission of proposed findings of fact and conclusions of law by each party, the court made its own final findings and conclusions and entered judgment granting an injunction against any future violations of the Act by Lum Humphries or Gene and James Humphries, and also enjoined the continued withholding of $1,805.74 in unpaid wages.

■■ On appeal Wagoner renews its objection to admission of Smith's computation sheets as not the best evidence of the alleged violation or amount of wages due. It asserts, moreover, that, rather than serving as helpful summaries, they actually set forth the factual basis for the trial court's judgment as to the amount of compensation withheld. It is, of course, true that where specific books and records are required by statute to prove the very matter at issue, testimony in lieu of such records is inadequate and inadmissible. See Allen v. W. H. O. Alfalfa Milling Co., 272 F.2d 98, 100 (10th Cir. 1959). Employers' records kept in compliance with Section 11(c) of the Act are, undoubtedly, the most persuasive proof of wages paid and hours worked. But in this case such records were simply unavailable. The computation sheets did not purport to reflect or summarize the information contained in the meager records which Smith examined. They were primarily based upon information obtained through interviews with the employees. ". . . [P]roof based on knowl-

edge gained independently of the written matter is admissible even though it may pertain to the same matter." Allen v. W. H. O. Alfalfa Milling Co., supra. See also Sayen v. Rydzewski, 387 F.2d 815, 819 (7th Cir. 1967). In these circumstances it was not prejudicial error to receive Smith's computation sheets in evidence for the limited purpose they were intended to serve.

In any event, the trial court's judgment does not rest solely upon the computation sheets. Rather, it is based upon the testimony of the affected employees who testified concerning the approximate dates of their employment, the number of hours they generally worked, and the precise amount of wages they received.

Since Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), it has been the rule in cases of this kind that ". . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

"The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act." 328 U.S. at 687–688, 66 S.Ct. at 1192–1193. See also Bledsoe v. Wirtz, 384 F.2d 767, 771 (10th Cir. 1967); Wirtz v. Lieb, 366 F. 2d 412, 414 (10th Cir. 1966).

The testimony of the former employees, standing alone, made out the Secretary's prima facie case. See Wirtz v. McClure, 333 F.2d 45, 47 (10th Cir. 1964); Mitchell v. Caldwell, 249 F.2d 10, 12 (10th Cir. 1957). And in the absence of any countervailing evidence it certainly wasn't error for the trial court to accept Smith's computations as to the exact amount of the compensation withheld as to each of the former employees. See Wirtz v. Lieb, supra, 366 F.2d at 415; Wirtz v. Turner, 330 F.2d 11, 14 (7th Cir. 1964).

For the first time on appeal Wagoner pleads the two year time bar of Section 6 of the Portal-to-Portal Act.[4] It contends that the provisions of the statute establish a substantive condition precedent to the maintenance of an action under Section 17, rather than a conventional procedural statute of limitation which must be defensively pleaded. In support of this contention Wagoner relies on the general rule that compliance with a time limitation is an indispensable prerequisite to the maintenance of a suit to enforce a right unknown at common law when the limitation is an integral part of the legislative scheme creating that right. See Bomer v. Ribicoff, 304 F.2d 427, 429 (6th Cir. 1962); Coy v. Folsom, 228 F.2d 276, 279 (3d Cir. 1955); Ewing v. Risher, 176 F.2d 641, 644 (10th Cir. 1949); United States v. Bureau of Revenue of State of New Mexico, 217 F.Supp. 849, 853 (D.C.N.M. 1963).

We are unable to agree with this contention, however, since we think the language and legislative history of the Portal-to-Portal Act clearly indicate that Section 6 was intended to serve as a conventional procedural statute of limitations. The wording of Section 6 is noticeably different from that of other statutory time limitations which have been interpreted as establishing conditions precedent. See, e. g., Section 706(d) of the Civil Rights Act of 1964,

4. 29 U.S.C. § 255.

**1284**

42 U.S.C. § 2000e–5(d); Section 202(g) of the Social Security Act, 42 U.S.C. § 402(i). Moreover, the limitation period of Section 6 was not a part of the legislative scheme embodied in the Fair Labor Standards Act of 1938, but was enacted in 1947 as part of the Portal-to-Portal Act. Cf. Kansas City, Missouri v. Federal Pacific Electric Co., 310 F.2d 271, 282–283 (8th Cir. 1962), cert. denied, 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed. 2d 171; 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 415. Its express purpose was to substitute a uniform federal limitations period for the diverse periods provided under statutes of the several States. See Section 1 of the Portal-to-Portal Act, 29 U.S.C. § 251. We think it clear that Section 6 was intended as a limitation on the remedy available, not on the right to bring the action, and must be pleaded as an affirmative defense in accordance with the requirements of Fed. R.Civ.P. 8(c), 28 U.S.C. See Pena v. Eastern Sugar Associates, 25 CCH Lab. Cas. ¶ 68,326, 12 Wage & Hour Cas. 69 (Sup.Ct.P.R.1954), aff'd on other grounds, 222 F.2d 934 (1st Cir.), cert. denied, 350 U.S. 900, 76 S.Ct. 178, 100 L.Ed. 791 (1955); Cope v. Freyn Engineering Co., 8 F.R.D. 620 (W.D.Pa. 1949).

At trial Wagoner's counsel attempted to ascertain whether the Secretary had obtained written consent from the former employees said to be due unpaid wages before filing this action. The court sustained the Secretary's objection on the grounds that such consent was unnecessary in suits brought pursuant to Section 17. Numerous cases have noted that provisions of the Fair Labor Standards Act and the Portal-to-Portal Act[5] requiring written consent have no application in actions for injunctive relief under the entirely separate enforcement provision of Section 17. See, e. g., Shultz v. Mistletoe Express Service, Inc., 434 F.2d 1267, 1272 (10th Cir. 1970); Hodgson v. American Can Co., 440 F.2d 916, 921, 922 (8th Cir.

1971); Hodgson v. Brookhaven General Hospital, 436 F.2d 719, 722 (5th Cir. 1970).

Wagoner's final argument is that the injunctive remedy was too harsh and completely unnecessary in this case and, that in any event, the court had no right to enjoin Gene and James Humphries since they were not parties to this lawsuit. The trial court has broad discretion when determining whether an employer should be enjoined from violating the Fair Labor Standards Act. See Triple "AAA" Company v. Wirtz, 378 F.2d 884, 887 (10th Cir. 1967); Buckley v. Wirtz, 326 F.2d 838, 839 (10th Cir. 1964). The record indicates that although Wagoner had been investigated by the Department of Labor on an earlier occasion, it continued to violate the Act's requirements and entered a false receipt showing restitution of back wages. These circumstances clearly warranted the trial court's decision to grant injunctive relief. Cf. Triple "AAA" Company v. Wirtz, supra; Wirtz v. Atlas Roof Manufacturing Co., 377 F.2d 112, 116–117 (5th Cir. 1967).

Wagoner's attack on the form of the injunction is also unjustified. "An injunctive decree may bind not only the parties defendant but also those who are represented by them or who are subject to their control or in privity with them . . . ." International Brotherhood of Teamsters, etc. v. Keystone F. Lines, 123 F.2d 326, 329 (10th Cir. 1941). See also Fed.R.Civ.P. 65(d). The evidence clearly indicates that Gene and James Humphries were actively involved in the management of the radio station. They acted in the capacity of agents or servants of the defendant and were proper subjects of the injunction. The fact that they were not parties to the lawsuit is of no consequence. See Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945).

The judgment is affirmed.

5. See 29 U.S.C. §§ 216(b), (c), and 256.