Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

UNITED VIDEO, INC., Defendant-Appellant.

No. 80–2215.

United States Court of Appeals, Tenth Circuit.

Jan. 17, 1984.

Richard L. Barnes, Tulsa, Okl. (Kothe, Nichols & Wolfe, Inc., Tulsa, Okl., were also on brief), for defendant-appellant.

Paula W. Coleman, Atty., U.S. Dept. of Labor, Washington, D.C. (T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Mary-Helen Mautner and Ruth E. Peters, Attys., U.S. Dept. of Labor, Washington, D.C., and James E. White, Regional Sol., Dallas, Tex., were also on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

United Video appeals from a judgment of the district court enjoining it from violating provisions of the Fair Labor Standards Act of 1938, as amended ("FLSA" or "Act"), 29 U.S.C. §§ 201 *et seq.*, and from withholding back pay for overtime due certain of its microwave system engineers. The district court concluded that the microwave system engineers were covered by the Act, and therefore entitled to be paid at one and one-half times their regular rate for overtime hours. *See* FLSA § 7(a), 29 U.S.C. § 207(a). United Video argued that its microwave system engineers were employed in a bona fide administrative capacity, and therefore exempt from the overtime provisions of the Act. *See* FLSA § 13(a)(1), 29 U.S.C. § 213(a)(1). On appeal, it repeats this argument and also contends that the district court's findings as to the number of overtime hours which the microwave system engineers worked and the amount of overtime compensation due them are not supported by the record. We affirm.

I

United Video is engaged in gathering and transmitting television video and audio signals and FM stereo radio signals. It utilizes almost 180 unstaffed microwave relay stations or towers located approximately twenty-five miles apart over eight states. Operation and maintenance of the microwave relay system are the responsibility of United Video's microwave system engineers. (I R. 64–66). Each engineer is responsible for ten to eighteen stations in a specific geographic area. (I R. 65).

Before June 1, 1975, United Video referred to these employees as microwave technicians and paid them on an hourly basis and time-and-a-half for overtime hours worked. (I R. 63). On June 1, 1975, United Video changed the job title from microwave technician to microwave system engineer and began paying the employees on a flat salary basis for all hours worked rather than on the usual hourly basis. (I R. 63). However, there was no change, after June 1, 1975, in the employees' job duties. (I R. 69). The only change in their conditions of employment was that they were no longer paid overtime compensation for hours worked in excess of forty hours per work week. (I R. 63; V R. 20).

The Secretary of Labor brought suit in the district court to enjoin United Video from violating the overtime and record keeping provisions of the Act, and to restrain the continued withholding of unpaid wages due under the Act to certain of defendant's microwave system engineers who provided maintenance and upkeep for United Video's microwave relay stations. United Video alleged that all the employees in question were administrative employees, and thus exempt from the Act's overtime provisions.

The district court bifurcated the case, considering first the issue whether United Video was obligated to pay overtime compensation to the employees in question. On the Secretary's motion for partial summary judgment, the district court ruled that United Video's microwave system engineers were not exempt as administrative employees from the Act's overtime provisions and that United Video, by failing to pay those employees overtime compensation for hours

worked in excess of forty hours per work week, violated the overtime provisions of the Act. It was stated by United Video's counsel at argument that there is no challenge to the summary judgment procedure, and it was pointed out that no testimony was observed by the district judge who decided the issue on depositions, stipulations, and answers to interrogatories. The company does, of course, challenge the legal conclusions underlying the summary judgment.

In the second stage of the proceedings, on the parties' stipulation that the matter be submitted to the court for trial on the record, the district court determined the amount of overtime compensation owed, based on United Video's records and the deposition testimony of the employees and of the compliance office. The district court enjoined United Video from committing future violations of the Act and from further withholding of unpaid overtime compensation which the court found to be due the employees.

This appeal followed.

## II

## A

Section 7(a) of the Act, 29 U.S.C. § 207(a) (1976), mandates overtime compensation for certain employees who work in excess of forty hours per week.[1] However, § 13(a)(1), 29 U.S.C. § 213(a)(1) (1976), exempts from the provisions of section 7 those employees who are employed in certain designated capacities, including an "administrative" capacity.[2] Such terms, under the statute, are left for definition and delineation by regulations promulgated by the Secretary of Labor.

The regulations establish two tests for determining whether an employee is exempt as a bona fide administrative employee. Employees earning less than $250 per week are subject to the "long test" of 29 C.F.R. §§ 541.2(a)–(e) (1976), whereas those earning $250 or more per week are governed by the "short test" as set forth in the proviso to § 541.2(e)(2).[3]

■ Both parties agree that the "short test" governs here. Under the short test,

1. 29 U.S.C. § 207(a) (1976) provides in part:
   (a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed; . . . .

2. 29 U.S.C. § 213 (1976) provides in part:
   (a) The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to—
   (1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of title 5, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the

number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities); . . . .

3. The regulation reads:
   The term "employee employed in a bona fide . . . administrative . . . capacity" in section 13(a)(1) of the act shall mean any employee:
   (a) Whose primary duty consists of either:
   (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or
   (2) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and
   (b) Who customarily and regularly exercises discretion and independent judgment; and
   (c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or
   (2) Who performs under only general supervision work along specialized or technical

employees are deemed exempt if (1) their "primary duty consists of . . . [t]he performance of office or nonmanual work directly related to management policies or general business operations of [the] employer or [the] employer's customers," 29 C.F.R. § 541.2(a)(1) (1976), and (2) such duty "includes work requiring the exercise of discretion and independent judgment." *Id.* § 541.2(e)(2). The employer who asserts the exemption has the burden of establishing both of these requirements by clear and affirmative evidence. *See Walling v. General Industries Co.,* 330 U.S. 545, 547–48, 67 S.Ct. 883, 884, 91 L.Ed. 1088 (1947); *Legg v. Rock Products Manufacturing Corp.,* 309 F.2d 172, 174 (10th Cir.1962).

In this case, the district court found that the employer's microwave system engineers are not exempt administrative employees because (1) their primary duty—maintenance of the microwave system—involves a substantial amount of manual work, and (2) the engineers do not customarily and regularly exercise discretion and independent judgment. United Video challenges both of these findings on appeal. However, we limit our review to the primary duty issue, which we find to be dispositive.[4]

> lines requiring special training, experience, or knowledge, or
>
> (3) Who executes under only general supervision special assignments and tasks; and
>
> (d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and
>
> (e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ($130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, or
>
> (2) Who, in the case of academic administrative personnel, is compensated for services as required by paragraph (e)(1) of this section, or on a salary basis which is at least equal to the entrance salary for teachers in the school system, educational establishment, or institution by which employed: *Provided,* That an employee who is compensated

## B

United Video contends that the district court erred in failing to apply the "scope of responsibility" as the exclusive standard for determining the employees' primary duty, and that its finding is unsupported by the evidence. The company says that the court erroneously narrowed its view to a single aspect of the duties and responsibilities of the engineers in determining their "primary duty," instead of evaluating the totality of the nature of the work required. We disagree.

Guidelines for determining an employee's primary duty are set forth in 29 C.F.R. §§ 541.206, 541.103 (1976) of the Secretary's regulations. As a "rule of thumb," an employee's "primary duty" means that duty which occupies the major part, or more than fifty percent, of an employee's time. *Id.* § 541.103. Time alone, however, is not the sole test. Other factors that may be considered include: the relative importance of the duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed. *Id.*

> on a salary or fee basis at a rate of not less than $250 per week ($200 per week if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa) exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all the requirements of this section. 29 C.F.R. § 541.2 (1976).

4. We observe, however, that the short test, unlike the long test, does not require that the employees "customarily and regularly" exercise discretion and independent judgment, as the district court apparently thought. Rather, the short test uses the more liberal standard that an employee's primary duty "include" work requiring the exercise of discretion and independent judgment. *Dymond v. United States Postal Service,* 670 F.2d 93, 95 (8th Cir. 1982). Since we find that the primary duty issue is dispositive, we need not consider the district court's ruling on the second issue.

■ Based on the amount of time involved and the overall importance of the work, the district court could properly find that the engineers' primary duty is the maintenance of United Video's microwave system. The court was not required to limit its inquiry to the employees' "scope of responsibility," as United Video contends.

Moreover, we are satisfied that the district court carefully evaluated all the employees' duties in reaching its determination,[5] and that its conclusion that maintenance is the engineers' primary duty is not in error. The record shows that each microwave engineer is responsible for maintaining ten to eighteen microwave relay stations in a specific geographic area. (I R. 65). The engineers' maintenance tasks include driving to the various relay points to perform preventive maintenance inspections and emergency repairs; driving their trucks is a task which by itself consumes fifty to seventy percent of the engineers' workweek. (I R. 67). The engineers perform preventive maintenance inspections at the relay stations at least once every quarter, and at some relay stations once a month. (I R. 65). The record shows that preventive maintenance can take up to twenty-five percent of the employees' work time and that short, minimal inspections are the exception and not the rule. (I R. 65; II R. 12; VIII R. 18, Johnson deposition; XIX R. 22). An inspection includes an overall check of the equipment according to prescribed procedures, the repair or replacement of any malfunctioning equipment, and a general clean-up of the area around the relay station. (I R. 65–66). In addition to performing preventive maintenance inspections, the microwave engineers are required to respond to emergency breakdowns or problems at the relay stations. (I R. 66). During the workweek they are always on call in case of an emergency, and every other weekend they are on emergency stand-by. (I R. 67).

5. The record shows that in addition to maintenance, the engineers' other duties include paperwork, customer relations, and, in certain cases, nominal supervisory work. The engineers' paperwork responsibilities consume, on the average, ten to thirty percent of the engineers' work week. (I R. 68). These responsibilities include preparing for United Video's home office weekly activity reports which describe the work done each week; preparing expense reports which document all the money spent; preparing shipping lists of parts ordered or sent for repair; and preparing and submitting annual budgets for operating expenses and capital expenditures. (I R. 67). Executive Vice President Bliss testified, however, that the scope of the engineers' budgetary responsibilities is limited to informing the home office of changes that are occurring in the engineers' geographic area of responsibility such as an increase in utility rates, gasoline prices, and vehicle maintenance repair rates in that area, and customer activity indicating that a customer might relocate or might require new services. (VII R. 21–22, Bliss deposition).

The engineers spend somewhere between zero and thirty percent of their work week on customer relations, depending on the number of customer stations in their geographic areas. (I R. 71). The customer relations responsibilities range from providing technical advice on specific problems or aspects of the microwave system, to general courtesy visits to maintain good relations with United Video's customers. (I R. 68). However, the amount and nature of the advice which the engineers are permitted to offer are limited by an instruction from United Video's management "not to get out on a limb" in giving advice on which the customer might rely, and which might "get [the company] into a liability situation." (I R. 68).

Finally, three of the engineers in question are operations or system managers, and as such perform some supervisory duties in addition to the regular duties of a microwave system engineer. (I R. 64; VIII R. 5, Johnson deposition; XIV R. 3; XX R. 4). The district court found, however, that these additional supervisory duties are not substantial enough to warrant different treatment for exemption purposes. We agree. The record shows that two of the three engineers, John Whaley and Timothy Tuthill, supervise only one employee each (XIV R. 20; XX R. 18), and spend only nominal amounts of their work week in supervisory work. (I R. 64) (one percent of work week); (I R. 64) (one to two hours per work week). The third engineer, Shaun Johnson, stated that he spends on the average ten hours per work week supervising four employees. (VIII R. 10, 12). However, his testimony makes clear that his supervisory work involves more coordination than direct supervision, and is in addition to the operational responsibilities common to all microwave engineers. (VIII R. 10, 13). On these facts, the district court did not err in treating the system managers and the microwave engineers as one group for exemption purposes.

We have considered *Marshall v. Western Union Tel. Co.*, 621 F.2d 1246 (3d Cir.1980), relied on by the company. The case does reject the Secretary's position for determining under the short test the exempt status from overtime pay provisions of managerial employees when they performed nonexempt work during a strike. The Secretary sought to apply a rule for making the "primary duty" determination on a weekly basis. The court held there was no basis in the Act for such a rule, that there was nothing in the definition of "primary duty" compelling an evaluation in such a weekly time frame, and that the Secretary would have to proceed by a rule making proceeding under the A.P.A. if such a rule were to be adopted. We do not feel that the case undermines the district court's conclusions here as being based on too narrow a view of the facts. As noted, the court evaluated all the duties of the engineers in making its determination.

In sum, the district court's conclusion that maintenance is the engineers' primary duty is based on permissible criteria, is supported by the record, and is not in error.

### C

Having determined the engineers' primary duty to be maintenance, the district court next considered whether that duty consists of "[t]he performance of office or nonmanual work directly related to management policies or general business operations of [the] employer or [the] employer's customers." 29 C.F.R. § 541.2(a)(1) (1976). The court found that although the engineers' maintenance duties undeniably were directly related to the management policies or general business operations of the employer, they nonetheless required a "great deal of manual work."[6] Although the court did not make an explicit finding that the nonmanual work criterion of § 541.2 was not satisfied, we feel that the court's reasoning and conclusions are apparent and that the record supports the ruling.

The district court recognized that 29 C.F.R. § 541.203(b) (1976) does not completely rule out the performance of "some manual work." However, in examining the record here, the court found that the engineers' maintenance duties involved a substantial amount of manual work, including the clean-up work which is part of the preventive maintenance inspection, the use of tools, instruments, and machinery required for the performance of maintenance, whether preventive or emergency, and the extensive truck driving previously noted. Thus the threshold of "some manual work" in 29 C.F.R. § 541.203(b) has been exceeded and the nonmanual work criterion has not been met.

We are satisfied that the district court's conclusion on this point is also correct. Therefore we affirm the ruling that the microwave system engineers were not within the exemption for bona fide administrative employees.

### III

United Video also contends that the district court erred in awarding unpaid overtime compensation because the Secretary failed to meet its burden of proving the hours worked by United Video's employees.

In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946), the Supreme Court stated:

[A]n employee has carried out his burden [in a claim for back wages under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may

---

**6.** The district court assumed without discussion that the engineers' primary duty does not consist of the performance of "office" work. Unit-

ed Video, however, does not question the assumption on appeal.

then award damages to the employee, even though the result be only approximate.

See also *Donovan v. Simmons Petroleum Corp.,* 725 F.2d 85–86 (10th Cir.1983); *Bledsoe v. Wirtz,* 384 F.2d 767, 771 (10th Cir.1967); *Wirtz v. Lieb,* 366 F.2d 412, 414 (10th Cir.1966).

In this case, because the employer failed to keep accurate records of the hours worked by all of its employees,[7] the Secretary was unable to show the precise extent of the employees' uncompensated work. However, the Secretary was able to, and did, introduce deposition testimony of each of the employees, the employer's payroll records, the compliance officer's computations, and the compliance officer's testimony on the method of his computations. In our judgment, this was sufficient evidence to establish, "as a matter of just and reasonable inference," the number of overtime hours worked and the amount of unpaid compensation due.

The burden then shifted to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." United Video has failed to produce precise records of the employees' work hours. Its only attempt to negative the reasonableness of the inferences is to argue that its time records are unreliable because the employees generally recorded eight hours each work day even if fewer hours were worked while they were on call, and because the company allowed the employees to take compensatory time off.

This argument is without merit. The compliance officer testified that he did not count on-call time as compensable time in the computations except when employees designated the actual hours worked while on call. (IX R. 12–13, 40). He further

testified that he took the compensatory time off into account in calculating the amount of overtime compensation due. (IX R. 102–03).

Having failed to keep accurate time records for the employees in question, United Video cannot be heard to complain that the back wage award lacks the precision of measurement that would be possible had it maintained proper records. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. at 688, 66 S.Ct. at 1192; *Donovan v. Simmons Petroleum Corp.,* 725 F.2d 83, 85 (10th Cir.1983) ("The employer cannot complain that the damages lack the precision that would have been possible if the employer had kept the records required by law.").

AFFIRMED.

---

7. The company stipulated with the Secretary that it had failed to keep and record the daily and weekly hours worked by all the microwave system engineers. (I R. 71). However, the memorandum opinion of the district court did later find that there was no such omission concerning the records as to three named engineers. This fact does not affect the result in the case.