[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10862

_____

D.C. Docket No. 05-01721 CV-WSD-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 15, 2008
THOMAS K. KAHN
CLERK

SHERYL L. HUFF,
R. SCOTT HUFF, et al.,

Plaintiffs-Appellants,

versus

DEKALB COUNTY, GEORGIA,

Defendant-Appellee,

DAVID A. FOSTER, individually and officially in his capacity
as Fire Chief of the DeKalb County Fire & Rescue Services,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 15, 2008)**

Before TJOFLAT, ANDERSON and COX, Circuit Judges.

COX, Circuit Judge:

I.    INTRODUCTION

The primary issue in this case is whether a group of paramedics, who are employed by a county fire department and trained in fire suppression, have the "responsibility to engage in fire suppression" under 29 U.S.C. § 203(y), and are accordingly partially exempt from the normal forty-hour overtime schedule established by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. We conclude that the district court properly determined that the paramedics have the "responsibility to engage in fire suppression" within the meaning of the FLSA.

II.    FACTS

Plaintiffs Sheryl Huff, Scott Huff, Jackie Craig, Timothy Guinn, Mary Martin, and David Miles are paramedics currently or formerly employed by the DeKalb County (Georgia) Fire & Rescue Services ("DCFRS"). All Plaintiffs were employed as dual-function or cross-trained Firefighters/Paramedics or Fire Medics, and were fully trained and certified in both fire suppression skills and advanced life support. The Plaintiffs were previously employed as paramedics by the Emergency Medical Services Bureau ("EMSB"). On November 20, 2001, the EMSB merged with the Bureau of Fire Services to form the DCFRS. All DCFRS paramedics, including the Plaintiffs, were initially provided overtime

2

compensation for work exceeding forty hours per week, which was consistent with their pay schedule at the EMSB.

Defendant David Foster ("Foster") became Chief of the DCFRS on January 2, 2003. He encouraged paramedics, including the Plaintiffs, to receive National Professional Qualification I ("NPQ I") firefighting training, which represents a higher level of training than the minimum required to be a firefighter in Georgia. (R.1-28, Stanley-Chase Aff. ¶¶ 4-5.) All Plaintiffs received the NPQ I certification. Plaintiffs Miles, Sheryl Huff, and Scott Huff later received NPQ II certification in advanced firefighting (which the DCFRS did not require), a higher level of training than NPQ I certification.

Beginning on May 24, 2003, the DCFRS classified the NPQ I Plaintiffs as "Firefighter/Paramedics" and the NPQ II Plaintiffs as "Fire Medics." These new titles carried new job descriptions, which included fire suppression duties. On May 24, all paramedics, including the Plaintiffs, were assigned to a 212 hour, 28 day work schedule, and were no longer paid overtime for work exceeding forty hours per week. They typically worked one 24-hour shift, followed by 48 hours off.[1]

---

[1]For administrative purposes, the DCFRS characterizes all employees on this work schedule as "53.0 hour employees," which represents the number of hours they would work each week if they were on a weekly work schedule.

3

Both Firefighter/Paramedics and Fire Medics can be assigned to fire apparatuses, which include Rescues, Trucks, Squads, Ladders, Technical Rescue Trucks, or Engines. Rescue apparatuses are staffed by two Fire & Rescue personnel and may include two Firefighter/Paramedics, two Fire Medics, one EMT/Firefighter and a Fire Medic or Firefighter/Paramedic, or two EMT/Firefighters. All Fire & Rescue personnel at a fire scene are required to wear fire protection gear, called "turn-out" gear, which includes protective clothing, air masks for breathing, firefighting boots, and a fire helmet.

At a fire scene, an incident commander assigns duties to all personnel available. According to Foster, all Fire & Rescue personnel, including all Plaintiffs, have the legal authority and responsibility to engage at any time in the prevention, control, and extinguishment of a fire. (R.1-28, Foster Aff. ¶ 20.) If the Plaintiffs fail to follow orders from an incident commander at a fire scene, including orders to engage in fire suppression, they would be subject to discipline. (R.1-28, Foster Aff. ¶¶ 21-22.)

All Plaintiffs were assigned to fire stations. The Unit Dispatch Criteria outlines what type of fire apparatus responds to a specific kind of emergency call. The requisite fire apparatus is obligated to respond.

4

NPQ I Plaintiffs (Firefighter/Paramedics)

Martin, Craig, and Guinn ("the NPQ I Plaintiffs") are "Firefighter/Paramedics," and they have Paramedic and NPQ I certifications. The job descriptions of Firefighter/Paramedics include performing basic firefighting and life rescue duties, in addition to responding to medical emergencies, disasters, multi-casualty incidents, and other types of emergencies. (R.1-28, Stanley-Chase Aff. Ex. L.) NPQ I-certified employees are routinely assigned to rescue vehicles, and while they are regularly dispatched to fire calls, they are not assigned to fire engines. Rescue vehicles carry fire-protective "turn-out" gear for fighting fires, but no other fire suppression equipment. Each NPQ I Plaintiff received "turn-out" gear in 2003.

According to testimony from DCFRS Fire Captains, employees with only NPQ I certification are not assigned fire suppression activities. NPQ I employees cannot engage in suppressing a house fire, but are authorized to extinguish small fires, such as a brush fire. Captain McKinley testified that NPQ I employees can be required to suppress an exterior structure fire. Captain Brooks testified that he has never assigned an NPQ I employee to extinguish a fire. The NPQ I Plaintiffs have never engaged in or been ordered to extinguish, fight, or suppress a fire.

## NPQ II Plaintiffs (Fire Medics)

Scott and Sheryl Huff are classified as "Fire Medic III," and they have Paramedic, NPQ I, and NPQ II certifications. David Miles is a "Fire Medic III(I)" (or "Interim," which means he is in training to become a Fire Medic III) and has Paramedic, NPQ I and NPQ II certification. We refer collectively to the Huffs and Miles as "the NPQ II Plaintiffs." Fire Medics are responsible for firefighting, extrication, life rescue, and providing advanced emergency medical care for the sick and injured. They are required to perform firefighting and "to improve knowledge and skill in all areas related to fire fighting and life rescue." (R.1-28, Stanley-Chase Aff. Ex. M at 7499.) Their job description indicates that they are to operate the apparatus to perform fire control and suppression, and inspect fire hydrants and fire station equipment. (R.1-28, Stanley-Chase Aff. Ex. M at 7499.)

Miles is usually assigned to a rescue vehicle, but has been assigned to a fire engine a few times since January 2005. Sheryl Huff was assigned to a fire engine at least four times between August and December 2005. The Huffs both testified by affidavit that "[w]henever I am assigned to a rescue unit, my assigned duties are almost exclusively medical care duties." (R.3-43, Ex. 3 ¶ 21; R.3-43, Ex. 4 ¶ 22.) Scott Huff said that he had asked several times to be the supervising officer in a fire engine, but his requests were denied.

Beginning around January 2005, Miles has occasionally been assigned the duty to engage in fire suppression. (R.2-29, Ex. 15 ¶ 7.)

III.  PROCEDURAL HISTORY

The Plaintiffs filed suit on June 29, 2005, against DeKalb County and Chief Foster in his official capacity, alleging both FLSA and Equal Protection violations. Specifically, the Plaintiffs allege that the Defendants violated the FLSA by failing to pay them overtime based on a forty-hour workweek.

The Plaintiffs filed a motion for class certification, which the district court denied. The Defendants then moved for summary judgment on all claims. Miles, Martin, Craig, and Guinn moved for partial summary judgment on their FLSA claims. The district court denied the Plaintiffs' motion for partial summary judgment, granted the Defendants' motion for summary judgment, dismissed all of the Plaintiffs' claims, and entered judgment in favor of the Defendants on all counts.[2]

_____

[2] While this appeal was pending, the Defendants filed a motion to dismiss Scott and Sheryl Huff from this appeal, since they did not join in the Plaintiffs' motion for partial summary judgment. The Defendants' motion for summary judgment, which the district court granted, asked for judgment against all Plaintiffs, including the Huffs. Therefore, the Huffs are proper parties to this appeal, and the Defendants' motion to dismiss the Huffs is DENIED.

The Plaintiffs appeal both the district court's grant of summary judgment in favor of the Defendants and its denial of their motion for partial summary judgment.[3]

## IV.  ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

The primary issue on appeal is whether the Plaintiffs have the "responsibility to engage in fire suppression" under an FLSA partial exemption to the normal overtime schedule.  The Plaintiffs contend that the district court erred in granting summary judgment to DeKalb County on this issue (and should have granted them summary judgment instead) because it ignored undisputed evidence that they were not responsible for engaging in fire suppression and devoted their time to emergency medical duties—not firefighting.  They also argue that 29 U.S.C. § 203(y), which provided a new definition of "employee in fire protection activities," did not abrogate the Department of Labor's definition.  The Defendants contend that summary judgment in their favor was proper because they met their burden of demonstrating that the Plaintiffs had a "responsibility to engage in fire suppression."[4]

---

[3] The Plaintiffs do not argue on appeal that the district court erred in granting summary judgment on their Equal Protection claims.

[4] The Plaintiffs also argue that the district court improperly denied their motion to strike affidavit testimony, pursuant to Rule 30(b)(6), from Lorrie Stanley-Chase and Chief Foster. Specifically, they contend that neither Stanley-Chase nor Foster had personal knowledge about the Plaintiffs' actual job duties, an issue about which they testified. They also argue that Stanley-Chase's testimony conflicted with testimony from Fire Captains, and that Foster's testimony conflicted with Stanley-Chase's testimony. A district court's decision regarding striking testimony by affiant is reviewed on an abuse of discretion standard. *Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1483 (11th

## V.   STANDARD OF REVIEW

This court reviews de novo a district court's grant or denial of summary judgment. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).

## VI.   DISCUSSION

The FLSA provides: "Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA supplies an exemption to this default rule for employees in fire protection activities:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities . . . if—(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as

---

Cir. 1997). Upon review of the arguments and the record, we cannot say that the district court abused its discretion in allowing this testimony.

9

determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days . . . compensation at a rate not less than one and one-half times the regular rate at which he is employed.

*Id*. § 207(k). For employees in fire protection activities working in 28-day work periods, the Department of Labor has promulgated a regulation proscribing overtime payment for all time worked beyond 212 hours each 28 days. *See* 29 C.F.R. § 553.230(c). Here, all Plaintiffs worked on a 28-day, 212-hour work schedule. Thus, whether the Plaintiffs fall within the § 207(k) exemption depends on whether they satisfy the definition of "employee within fire protection activities."

A.      Regulatory Definitions of "Employee in Fire Protection Activities"

Prior to 1999, the FLSA did not provide a statutory definition for "employee in fire protection activities." Guidance came from Department of Labor regulations:

As used in [§ 207(k)], the term "any employee . . . in fire protection activities" refers to any employee (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires . . . .

10

29 C.F.R. § 553.210. Another regulation, known as the "80/20 Rule," provided that otherwise exempt employees may not be considered "employees engaged in fire protection activities" if they spend more than twenty percent of their working time engaged in non-exempt activities (that is, activities not related to fire suppression). *Id*. § 553.212.

    B.    Section 203(y)'s New Definition of "Employee in Fire Protection Activities"

Because of significant confusion in the application of this regulatory definition, in 1999 Congress added a statutory definition to "clarify the overtime exemption for employees engaged in fire protection activities." Fair Labor Standards Act Amendment, Pub. L. No. 106-151, 113 Stat. 1731 (1999). The new statutory definition states:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker who—(1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y).

The Fifth Circuit held that § 203(y) "provides a definition previously provided by § 553.210 and its subsidiary regulation § 553.212. Both of these regulations are therefore now obsolete and without effect." *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 428 (5th Cir. 2006). We agree.

Section 203(y) is a streamlined definition, simpler than the definition contained in the regulations, and its stated purpose was to "clarify the overtime exemption for employees engaged in fire protection activities." The Plaintiffs argue that the regulatory definition of "employee in fire protection activities," particularly the 80/20 Rule, still applies. We disagree. Section 203(y) would hardly be a clarification if Congress intended it to pile onto already confusing and complicated regulations. Our interpretation of § 203(y) as having abrogated the regulatory definitions has two consequences in this case. First, the Plaintiffs' argument that the 80/20 Rule should apply to them is without merit. Second, our § 207(k) precedent is of limited value to us, since it all involves application of the regulatory definitions.

C. The Plaintiffs are "Employee[s] in Fire Protection Activities" Within the Meaning of § 203(y)

"The burden is on the employer to prove he has adopted a 7(k) workweek exemption." *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 2229

(1974)). "The defendant must prove applicability of [a § 207(k)] exemption by 'clear and affirmative evidence.'" *Id.* (quoting *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir. 1984)). DeKalb County thus has the burden of proving, by "clear and affirmative evidence," that the Plaintiffs are exempt under § 207(k) by showing that they satisfy each element of § 203(y)'s definition of "employee in fire protection activities."[5]

Under § 203(y), an employee must meet five criteria to fall within the § 207(k) exemption: (1) be trained in fire suppression; (2) have the legal authority to engage in fire suppression; (3) have the responsibility to engage in fire suppression; (4) be employed by a fire department of a municipality, county, fire district, or State; and (5) be engaged either (i) in the prevention, control, and extinguishment of fires, or (ii) in the response to emergency situations where life, property, or the environment is at risk.

---

[5] The Plaintiffs assert that the Defendants' argument that § 207(k) applies to them is an affirmative defense that cannot be raised at the summary judgment stage when it was not first raised in the answer. Precedent supporting the proposition that FLSA exemptions are affirmative defenses discuss exemptions enumerated in 29 U.S.C. § 213, not § 207(k). *See, e.g., Corning Glass Works*, 417 U.S. at 196-97, 94 S. Ct. at 2229. Section 207(k) is actually a *partial* exemption, since it extends the permissible non-overtime workweek, instead of doing away with it entirely. As the Defendants point out, § 207(k) is part of the general FLSA overtime rule itself (and in the same section), and § 213 provides exemptions to the rule. For these reasons, the Defendants properly raised the § 207(k) argument at the summary judgment stage and were not required to do so in their answer. *See Brock v. City of Cincinnati*, 236 F.3d 793, 809-10 (6th Cir. 2001) (holding that a defendant need not plead § 207(k) in its answer). And, the Plaintiffs had ample notice that this argument was being raised.

It is undisputed that all Plaintiffs are trained in fire suppression,[6] have the legal authority to engage in fire suppression, are employed by a County fire department, and respond to emergency situations where life, property, or the environment is at risk. The issue in this case, therefore, involves the third requirement: whether the Plaintiffs have the "responsibility to engage in fire suppression." If they do, they fall within the § 207(k) exemption, as defined by § 203(y), and they are not entitled to the normal forty-hour overtime pay schedule required by the FLSA. This is a question of statutory construction which this court has not previously addressed.

The Ninth Circuit discussed the meaning of "responsibility" in § 203(y). *Cleveland v. City of L.A.*, 420 F.3d 981 (9th Cir. 2005). *Cleveland* held that cross-trained firefighter/paramedics had no "responsibility" to engage in fire suppression under § 203(y) because they had no real obligation or duty to fight fires, were not regularly dispatched to fire scenes, did not carry firefighting equipment, and were expected to perform only medical services. *Id.* at 990.

---

[6] "Full-time, part-time, and volunteer firefighters . . . shall successfully complete a basic training course." Ga. Code Ann. § 25-4-9(a) (West Supp. 2007). Upon successful completion of a basic training course, an individual becomes a Georgia Basic Firefighter and is lawfully qualified to fight fires. NPQ I certification, which all the Plaintiffs have received, is an advanced level of training in fire suppression and exceeds the minimum level of training required for Georgia firefighters.

*Cleveland* defines "responsibility" in § 203(y) in following way: "[F]or Plaintiffs to have the 'responsibility' to engage in fire suppression, they must have some real obligation or duty to do so. If a fire occurs, it must be their job to deal with it." *Id.* Even if we accept *Cleveland*'s definition of "responsibility," DeKalb County has met its burden of demonstrating that the Plaintiffs have a "responsibility" to engage in fire suppression under § 203(y) since they have a real obligation or duty to engage in fire suppression.

*Cleveland* is distinguishable. All Plaintiffs are assigned "turn-out" gear, which includes breathing apparatuses. Also, NPQ II Plaintiffs have been assigned to ride in fire engines. Although the vast majority of the Plaintiffs' time is devoted to medical duties, all of their job descriptions include fire suppression. There is undisputed testimony that all Plaintiffs are qualified to engage in fire suppression and must do so if ordered, whereas the *Cleveland* plaintiffs had no such obligation. The Ninth Circuit said that the *Cleveland* plaintiffs "may volunteer to assist firefighters at a fire scene, but if they do not volunteer, they are not subject to discipline." *Id.* at 984.

Some district courts have considered the issue we address today.[7] The district court opinion with facts most similar to this case is *Gonzalez v. City of Deerfield Beach, Florida*, where the Southern District of Florida held that a cross-trained firefighter fell within the definition of § 203(y). 510 F. Supp. 2d 1037, 1041-42 (S.D. Fla. 2007). That case, just like this one, turned upon the "responsibility" requirement, and the court rested its holding on the facts that the plaintiff was trained to fight fires, had "turn-out" gear which he wore at fire scenes, and had the responsibility to engage in fire suppression when his superiors ordered him to do so. *Id.* at 1041.

The Defendants urge us to examine the legislative history of § 203(y), which they claim reveals Congress's intent to exempt employees similar to the Plaintiffs from the forty-hour workweek. "[R]eference to legislative history is inappropriate when the text of the statute is unambiguous." *HUD v. Rucker*, 535 U.S. 125, 132, 122 S. Ct. 1230, 1234 (2002) (citation omitted). "The best evidence of [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President. Where that contains a phrase that is unambiguous—that has a clearly

---

[7] *See, e.g., Lawrence v. City of Phila.*, No. 03-CV-4009, 2006 WL 2847330 (E.D. Pa. Sept. 29, 2006) (holding that § 203(y) applies to a group of fire service paramedics who infrequently engaged in fire suppression when directed to do so); *Diaz v. City of Plantation, Fla.*, No. 05-60757, 2006 WL 5056118 (S.D. Fla. Sept. 15, 2006) (holding that § 203(y) does not apply to a group of paramedics and emergency medical technicians who were not trained in firefighting or authorized by city policy to enter a structure fire or hazardous environment).

accepted meaning in both legislative and judicial practice—we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process." *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98-99, 111 S. Ct. 1138, 1147 (1991) (citation omitted). The term "responsibility" is not vague or unclear in § 203(y), so the statute cannot be deemed ambiguous. So, review of legislative history would be inappropriate and we therefore examine the common meaning of the term "responsibility," guided by canons of statutory construction.

The starting point of statutory construction is to begin "with the words of the statutory provision." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). When examining the words of a statute, "[i]n the absence of a statutory definition of a term, we look to the common usage of words for their meaning." *Consol. Bank, N.A. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997). There being no statutory definition of "responsibility" in § 203(y), we look to the common meaning of that word.

The common usage of the term "responsibility" is "a duty, obligation, or burden." American Heritage Dictionary of the English Language (4th ed. 2000). Other dictionaries define "responsibility" as "[a] charge, trust, or duty, for which one is responsible," Oxford English Dictionary (2nd ed. 1989), and a "moral, legal, or mental accountability," Webster's Third New International Dictionary (1981).

17

Courts should read statutes as a "consistent whole." *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1247 (11th Cir. 2006). In doing so, this court must respect the "longstanding . . . general principle that courts must not interpret one provision of a statute to render another provision meaningless." *Id.* With this principle in mind, we proceed to analyze the entirety of § 203(y) to determine the appropriate meaning of "responsibility." Section 203(y) states:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, . . . who—(1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

The Plaintiffs argue that they do not fall within the ambit of § 203(y) because many of them have never engaged in any type of fire suppression. But, § 203(y) does not require actual engagement in fire suppression, as demonstrated by the disjunctive clause at the end of the statute: "'Employee in fire protection activities' means an employee . . . (2) [who] is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk." The parties do not dispute that the Plaintiffs are engaged in the "response to emergency situations where life, property, or the environment is at risk." Since §

18

203(y) phrases this requirement in the disjunctive, there is no statutory requirement that there be *any* level of actual engagement in fire suppression.

Neither does the term "responsibility" by itself require any actual engagement in fire suppression. "Responsibility to engage in fire suppression" must mean something other than "is engaged in the prevention, control, and extinguishment of fires."[8] Put another way, "responsibility" does not imply any actual engagement in fire suppression, and employees may have a "responsibility to engage in fire suppression" without ever actually engaging in fire suppression themselves. This "responsibility" is a forward-looking, affirmative duty or obligation that an employee may have at some point in the future. Further, if we read "responsibility" to require actual engagement in fire suppression, DeKalb County could simply assign its paramedics (who already meet the other requirements of § 203(y)) to perform fire suppression activities occasionally, for the sole purpose of exempting them from the FLSA forty-hour overtime standard. This construction is consistent with the accepted definition of "responsibility," which refers to a duty—which one may or may not ever be called upon to perform. The Fifth Circuit observed that emergency medical personnel trained

---

[8] The textual canon of statutory construction *noscitur a sociis* ("a word is known by the company it keeps") is particularly helpful for interpreting the meaning of "responsibility" in § 203(y). Under this maxim, a word's meaning may be determined by reference to the rest of the statute.

as firefighters and attached to a fire department may be considered "employees engaged in fire protection activities even though they may spend one hundred percent of their time responding to medical emergencies." *McGavock*, 452 F.3d at 427. We agree.

A primary thrust of the Plaintiffs' case, however, is that they have no *real* duty or obligation to engage in fire suppression, and so they have no "responsibility." They point to DCFRS internal policy that does not allow NPQ I Plaintiffs to enter buildings to engage in fire suppression. But, other undisputed evidence indicates that the Plaintiffs do have the "responsibility" to engage in fire suppression.

It is undisputed that all Plaintiffs have advanced firefighting training. It is also undisputed that the DCFRS has equipped them with "turn-out" gear, sends them regularly to fire scenes, and requires them to be available to assist with fire suppression if they are needed. Even the NPQ I Plaintiffs are authorized under DCFRS policy to engage in exterior fire suppression, such as brush fires, and § 203(y) makes no distinction between structural fires and exterior fires. Further, the DCFRS Fire Captains testified that if the Plaintiffs were ordered to engage in fire suppression, they must do so, or be subject to discipline. While the incident commanders evidently do not, as a matter of policy, order NPQ I-certified employees to engage in fire suppression, this does not mean that the NPQ I Plaintiffs do not have a "responsibility" to engage in fire suppression if ordered. Finally, fire suppression is in each Plaintiff's

20

job description. All Plaintiffs therefore have the "responsibility" to engage in fire suppression within the meaning of § 203(y). While the actual exercise of this responsibility may be contingent on the particular demands of a fire scene, it does not make the responsibility less real.

VII. CONCLUSION

For the foregoing reasons, we find that the Plaintiffs have the "responsibility to engage in fire suppression" under § 203(y) and are thus partially exempt from the FLSA's forty-hour overtime schedule.[9]

AFFIRMED.

---

[9] The Plaintiffs also assert that the district court erred in denying class certification, at least with regard to the FLSA class action. A district court's decision not to certify a class is reviewed for abuse of discretion and will be affirmed even if this court would have ruled differently in the first instance. *Cooper v. Southern Co.*, 390 F.3d 695, 711-12 (11th Cir. 2004). Since we affirm the district court's grant of summary judgment in favor of the Defendants, we do not address this issue.

ANDERSON, J., concurring:

I join the opinion for the court fully.  I make only this additional comment.  It does seem to me that the statute is not unambiguous.  Thus, if there were a reasonable administrative regulation, to which a court would owe deference, I would defer (even if the result were different from that which we reach in this opinion).