**In re Dahlia M. STOCKER, Debtor.**

**No. 6:07–bk–05100–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

May 14, 2008.

---

Hurley Partin Whitaker, Hurley Partin Whitaker PA, Melbourne, FL, for Debtor.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motion to Dismiss Pursuant to 11

U.S.C. Section 707(b)(1) Based on Presumption of Abuse (Doc. No. 19) ("Motion to Dismiss") filed by Donald F. Walton, the Acting United States Trustee for Region 21 ("UST"), seeking dismissal of this case pursuant to 11 U.S.C. Sections 707(b)(1) and (b)(2).[1] A final evidentiary hearing was held on March 10, 2008 at which Dahlia M. Stocker, f/k/a Dahlia Maria Falco, the Debtor herein ("Debtor"), counsel for the Debtor, and counsel for the UST appeared. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### Antenuptial Agreement and Financial Background

The Debtor filed this individual Chapter 7 case on October 18, 2007 ("Petition Date"). She has been married to Edward C. Stocker ("Mr. Stocker") since July 24, 2004. He is not a debtor in bankruptcy. The Debtor and Mr. Stocker executed an Antenuptial Agreement ("Agreement") on July 22, 2004.[2] They are the only parties to the Agreement. It constitutes a private contract between them. It has not been amended or rescinded.

The Agreement provides various property shall remain the sole and separate property of Mr. Stocker throughout the marriage: (i) real property located at 1460 Whitman Drive, West Melbourne, Florida ("Residence"); (ii) a 2004 Mustang GT;

(iii) a 2001 Honda Accord; (iv) a savings account of $10,000.00; (v) a checking account of $5,000.00; (vi) shares of Publix stock valued at $16,612.00; and (vii) inheritances, wages, profits, retirement contributions, and asset appreciation.[3] The Debtor's separate property includes "miscellaneous personal property with value under Twenty Thousand Dollars (<$20,000)."[4]

Mr. Stocker is solely responsible for all costs relating to his separate property:

> Husband shall be solely responsible for the costs of operating, maintaining, or improving his separate property, including any income taxes, property taxes, state taxes, and intangible taxes which may be levied on Husband's separate property and income, from his separate property and income, except as may be agreed to otherwise by the Parties, in accordance with the provisions set forth herein.

Agreement at ¶ 4.5. The parties are individually responsible for their pre-existing and individual post-marriage debts and obligations:

> Neither Party shall assume or become responsible for the payment of any pre-existing debts or obligations of the other Party because of the marriage. Further, neither Party shall incur any debts or obligations during the marriage for which the other could be held responsible without the express written consent of the other ... Any obligation jointly entered by the Parties, either prior to or

---

1. The UST also seeks dismissal pursuant to 11 U.S.C. Section 707(b)(3), but went forward only pursuant to Section 707(b)(2) and reserved the right to pursue dismissal pursuant to Section 707(b)(3) at a later time if necessary. A totality of the circumstances analysis pursuant to Section 707(b)(3)(B) is unneces-

sary. The UST does not contend this case was filed in bad faith.

2. UST's Exh. No. 12; Debtor's Exh. No. 1.

3. *Id.*

4. *Id.*

during the marriage, shall remain a joint obligation of both.

Agreement at ¶ VII.

There is a significant disparity between the parties' incomes. Mr. Stocker has been a pharmacist with Publix Super Markets, Inc. for several years. His 2007 annual salary was $110,000.00. He was earning gross monthly wages of $9,364.00 and contributing $934.77 per month to his employer's 401(k) retirement plan on the Petition Date (Doc. No. 11). His monthly net pay on the Petition Date was $6,491.99 after the 401(k) payroll deduction of $934.77 and taxes and social security deductions of $1,937.68.

The Debtor filed amended schedules on March 6, 2008 (Doc. No. 33) reducing Mr. Stocker's monthly gross income to $8,699.58, his tax deductions to $1,832.07, and his monthly 401(k) contribution to $883.73, resulting in monthly net pay of $5,983.78. No wage verification documentation was presented for Mr. Stocker.

The Debtor is a dental hygienist. She earned approximately $44,432.00 in 2005 and $48,247.74 in 2006 (Doc. No. 11). She was employed as a dental hygienist earning gross monthly income of $3,889.29 on the Petition Date, as verified by her Payroll Summary.[5]

The Debtor has a household of three— Mr. Stocker, herself, and their infant child. Mr. Stocker handles the family finances. He requires the Debtor to submit to him each month a check for fifty percent of the household expenses.[6] He explained he set their household expense contribution at 50/50 rather than basing it on their respective income levels because he did not want the Debtor "to blow" her income.

The Debtor and Mr. Stocker reside at the Residence, which continues to be titled solely in Mr. Stocker's name and is encumbered by two mortgages for which Mr. Stocker is the only mortgagor. The Debtor owns no real property.

The Debtor's Schedule F debts total $31,686.91, which are all consumer debts (Doc. No. 30). The largest debt is the claim of $18,665.00 held by Global Acceptance Credit Company relating to the repossession of the Debtor's Isuzu Rodeo in 2002.[7] The Global debt is unliquidated. The remaining debts include her student loan, medical, and nominal credit card and utility debts. She has no secured or priority debts and no lease or executory contract obligations.

The Debtor listed assets of $10,175.00 in Schedule B, which include two IRAs with a combined value of $9,000.00.[8] Mr. Stocker lends money to the Debtor to make the IRA contributions and she repays his loans sporadically. The Debtor does not own or lease a vehicle. Mr. Stocker owns two vehicles titled solely in his name. The Debtor and Mr. Stocker have no joint debts or joint assets.

### *Means Test*

This case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[9] BAPCPA, among other things, broadened the standard for dismissal of Chapter 7 cases from "substantial abuse" to "abuse" and created a rebuttable presumption of abuse.

An abuse determination turns upon a mathematical calculation. Every debtor is required to file Official Form 22A entitled "Chapter 7 Statement of Current Monthly

---

**5.** UST's Exh. No. 13; Doc. Nos. 11, 33.

**6.** UST's Exh. No. 7.

**7.** UST's Exh. Nos. 2, 3 (Doc. Nos. 1, 11).

**8.** UST's Exh. No. 3 (Doc. No. 11).

**9.** Pub.L. No. 109–8, 119 Stat. 23 (2005).

Income and Means–Test Calculation," which is the key component in determining whether the presumption arises. The form calculates average monthly income, less allowable expenses, over a sixty-month period.[10] The non-filing spouse's income is included in the calculations, pursuant to Line 2c, where the debtor is married and filed an individual bankruptcy case and the spouses do not maintain separate households. The portion of the non-filing spouse's income not dedicated to paying household expenses is deducted from the current monthly income at Line 19 as a "marital adjustment."

A filing is presumed abusive if the current monthly income, less allowed expenses, is greater than BAPCPA's statutory thresholds for disposable income.[11] Put simply, a Chapter 7 filing is presumed abusive if there is net monthly income of $182.50 or more (at least $10,950.00 to fund a sixty-month plan).[12] A Chapter 7 filing is not presumed abusive if there is less than $109.58 per month in net income (less than $6,575.00 to fund a sixty-month plan).

The Debtor filed her original Means Test with Schedules I and J on November 16, 2007 (Doc. No. 11). The UST timely filed its Motion to Dismiss, to which the Debtor did not respond, but several months later (and four days prior to the March 10, 2008 hearing) filed an Amended Means Test with Amended Schedules I

and J (Doc. Nos. 33, 34). The original and the Amended Means Tests contain the statement: "The presumption arises."

The presumption of abuse arises using the calculations in the original or the Amended Means Test. The Debtor is an above-median debtor; her household income greatly exceeds the State Median Income of $55,347.00 for a family of three in Florida. She is subject to BAPCPA's limitations on allowed expenses. The Debtor's current household income, less her claimed deductions, exceeds the statutory maximums allowed by the Bankruptcy Code.

The Debtor's Amended Means Test reflects monthly disposable income of $2,317.50 (Doc. No. 34, Line 50), which could be used to repay her debts. This amount constitutes disposable income of $139,050.00 for a sixty-month period.

Her sixty-month disposable income in her original Means Test is $150,703.80 (Doc. No. 11, Line 51). Both sixty-month disposable income figures are greater than $10,950.00 and $7,921.73 (twenty-five percent of the Debtor's total non-priority unsecured debts of $31,686.91).[13]

The Debtor made additional monthly expense claims in Line 56a of her original and Amended Means Tests. She claimed $9,364.44 as an additional monthly expense described as "pursuant to Marital Ante-

10. The calculations incorporate the Census Bureau's Median Family Income Data and the IRS' National Standards for Allowable Living Expenses and Local Standards for Transportation and Housing and Utilities Expenses.

11. A presumption of abuse arises, pursuant to the statutory calculation of 11 U.S.C. Section 707(b)(2)(A), where a debtor's current monthly income, less allowed expenses, and multiplied by 60 is not less than the lesser of: (i) twenty five percent of the debtor's nonpriority

unsecured claims in the case, or $6,575.00, whichever is greater; or (ii) $10,950.00.

12. If the debtor's net monthly income is more than $109.58 but less than $182.50, the case will be presumed abusive if that sum, when multiplied by sixty months, will pay twenty-five percent or more of the debtor's nonpriority, unsecured debts.

13. 11 U.S.C. § 707(b)(2)(A)(i)(I): "25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater."

nuptial Agreement", in her original Means Test. The expense figure of $9,364.44 is Mr. Stocker's gross monthly income in the Debtor's original Schedule I.

The Debtor claimed an addition monthly expense of $2,315.00 in Line 56a of her Amended Means Test stating "Antenuptial Agreement prevents husband's payment of wife's premarital debts which are the only unsecured debt[s] being discharged." Such expense claim eclipses, except for $2.50, the Debtor's monthly disposable income of $2,317.50 in Line 50.

The Debtor asserts the Agreement constitutes a "special circumstance" in that it prevents Mr. Stocker's income from being considered in her means test calculation. The issue for determination is whether the Debtor has rebutted the presumption of abuse through the showing of "special circumstances."

The Bankruptcy Code requires a debtor claiming special circumstances to:

(i) demonstrate there is no reasonable alternative to the additional expenses or adjustment of income;

(ii) itemize each additional expense or adjustment of income;

(iii) provide documentation for such expense or adjustment to income;

(iv) provide a detailed explanation of the special circumstances that make such expense or adjustment to income necessary and reasonable; and

(v) attest under oath to the accuracy of the information provided.

Congress included two non-exclusive examples of "special circumstances" in BAPCA: (i) "a serious medical condition;" or (ii) "a call or order to active duty in the Armed Forces."

The Debtor has failed to carry her burden to rebut the presumption of abuse. She did not itemize and document how the $2,315.00 additional expense figure in Line 56a was calculated and from what it derives. The Debtor submitted the Agreement and a monthly expense statement prepared by Mr. Stocker with input from the Debtor setting forth the parties' monthly household expenses and their contributions. She did not establish the Line 56a additional expense of $2,315.00 is necessary and reasonable.

The expense statement is not credible. The Debtor's original and Amended Schedule I are identical as to the Debtor's income and set forth gross monthly income of $3,889.29 and net monthly income of $2,561.31. The expense statement sets forth the Debtor pays *$3,448.36* per month for expenses.[14] It is fiscally impossible for the Debtor, based upon her Schedule I information and wage verification, to pay $3,448.36 for monthly household expenses. The Debtor did not establish the veracity of the listed expenses and that she actually pays any of the expenses set forth in the expense statement or her Means Test.

The expense statement does not comport with the parties' testimony and the Agreement. It sets forth the Debtor pays half of the mortgages, car payments (she allegedly pays the higher car payment of $672.94 and Mr. Stocker pays $535.52 for the second car), utilities, insurance, and asset maintenance. The house and vehicles are assets of Mr. Stocker and, pursuant to the Agreement, the Debtor has no responsibility for paying any of the expenses related to these assets.

The expense statement sets forth the Debtor pays half of the child care expense ($268.75) and $333.00 per month for an IRA contribution. The parties testified

14. UST's Exh. No. 7.

their parents provide child care and did not establish any child care expenses. They testified Mr. Stocker makes the Debtor's IRA contributions through loans to the Debtor.

The amounts in the expense statement do not correlate with either the original or the Amended Means Test, nor with the Schedule J figures. For example, the expense statement asserts the Debtor pays $268.75, fifty-percent of monthly child care costs, but Line 30 of the Amended Means Test asserts she pays $537.50.

The Debtor failed to demonstrate there is no reasonable alternative to the additional expense claimed in Line 56a. The additional expense in an attempt to manipulate the means test and overcome the abuse presumption.

The Agreement is not consistent with the congressional intent nor the statutory examples to be sufficiently "special" to rebut an abuse presumption. Congress created the "special circumstances" provision as a safety valve to provide Chapter 7 relief to debtors who have extraordinary and involuntary or unexpected challenges placed upon on them and who are in dire need of such relief.

Antenuptial agreements are commonplace contracts created and controlled by the husband and wife. The Agreement is a private voluntary contract between Mr. Stocker and the Debtor, with which they have not complied. Mr. Stocker, in contravention of the Agreement, extracts monthly payments from the Debtor expending all of her monthly income for payment of expenses for which she has no obligation. The Debtor allows such extractions despite the clear terms of the Agreement. The Agreement is not a special circumstance.

Even if Mr. Stocker's income is UST's Exh. No. 7. excluded from the means test

calculation the Debtor fails the means test. She claimed several expense deductions in both her original and amended Means Tests that are not allowable expenses:

(i) Line 17 marital adjustment of $5,098.16. The Debtor failed to establish what this figure derives from and justify it as an allowable deduction.

(ii) Line 20A non-mortgage expenses of $366.00. The Debtor has no responsibility for expenses relating to the Residence pursuant to the Agreement.

(iii) Line 20B mortgage expense of $769.00: The Debtor has no responsibility for mortgage expenses pursuant to the Agreement.

(iv) Line 23 vehicle ownership/lease expense of $471.00: The Debtor does not own or lease a vehicle. She has no responsibility for car expenses pursuant to the Agreement.

(v) Line 30 child care expense of $537.50: The parties did not establish they have any child care costs.

(vi) Line 38 education expenses for minors of $137.50: The parties testified the Debtor contributes $50.00 per month to their child's Internal Revenue Code Section 529 plan.

The Debtor overstated her deductions to manipulate the Means Test and avoid repayment of her debts. The removal of these non-allowable deductions causes the Debtor's income to further exceed the statutory maximums.

The Debtor is not in dire need of Chapter 7 relief. The Global claim is unliquidated and her student loan debt may be non-dischargeable. She has sufficient disposable income for meaningful payments to propose a successful Chapter 13 proceeding for her and her creditors' benefit.

The presumption of abuse exists. Granting the Debtor relief would be an abuse of the provisions of Chapter 7. The Debtor has sufficient disposable income to repay her debts. The Debtor has not rebutted the presumption by demonstrating special circumstances exist. Her case is due to be dismissed.

### CONCLUSIONS OF LAW

■ A Chapter 7 case filed by an individual with primarily consumer debts is subject to dismissal if, after notice and a hearing, a Court "finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1) (2007). A means test is employed to establish whether there is a presumption of abuse:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—
>
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
>
> (II) $10,950.00.

11 U.S.C. § 707(b)(2)(A)(i) (2007). Subsections (ii) through (iv) of Section 707(b)(2)(A) define the allowable monthly expenses to be used in the means test calculation.[15] The non-filing spouse's income is included in the means test calculation, pursuant to Line 2c of Form 22A and 11 U.S.C. Section 101(39A), where the debtor filed an individual bankruptcy case, is married, and the debtor and spouse maintain a joint household.

A debtor whose household income exceeds the state median income is considered an above-median debtor whose monthly expenses are subject to BAPCPA's strict limitations. 11 U.S.C. § 101(39A) (defining "median family income"); *In re Wilson*, 383 B.R. 729, 731 (8th Cir. BAP 2008). The Debtor's household income exceeds the State Median Income of $55,347.00 for a family of three in Florida. She is subject to the expense limitations of 11 U.S.C. Section 707(b)(2)(A).

The Debtor's debts are primarily consumer debts and the presumption of abuse has arisen. The Debtor asserts the Agreement, pursuant to which Mr. Stocker has no responsibility for the Debtor's debts, constitutes a "special circumstance" rebutting the abuse presumption.

The presumption of abuse is rebuttable upon a showing by a debtor of "special circumstances":

> In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income *for which there is no reasonable alternative.*

11 U.S.C. § 707(b)(2)(B)(i) (*emphasis added*). A debtor, to establish special circumstances, must:

> (ii) ... itemize each additional expense or adjustment of income and to provide—
>
> (I) documentation for such expense or adjustment to income; and

---

**15.** Subsections (iii) and (iv) of Section 707(b)(2)(A), which address the calculations of monthly payments on secured debt and priority claims, is not relevant to this proceeding in that the Debtor has no secured or priority debts.

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. §§ 707(b)(2)(B)(ii), (iii). A debtor must further establish the additional expenses or adjustments:

... (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000.00, whichever is greater; or

(II) $10,000.

11 U.S.C. § 707(b)(2)(B)(iv).[16]

▮ Section 707(b)(2)(B)(i) contains two examples of "special circumstances" justifying additional expenses or adjustment of monthly income: (i) "a serious medical condition"; and (ii) "a call or order to active duty in the Armed Forces." The examples are non-exclusive by virtue of the precedent words "such as." *In re Armstrong*, No. 06–31414, 2007 WL 1544591, at *2 (Bankr.N.D.Ohio May 24, 2007). A Bankruptcy Court has broad discretion to determine on a case by case basis whether special circumstances exist. *In re Templeton*, 365 B.R. 213, 216 (Bankr. W.D.Okla.2007).

Courts have taken various approaches in determining what other events or circumstances constitute "special circumstances." *See, e.g., In re Pageau*, 383 B.R. 221, 225–26 (Bankr.D.N.H.2008) (surveying various interpretations of "special circumstances"); *In re Lightsey*, 374 B.R. 377, 382 (Bankr. S.D.Ga.2007) (finding non-dischargeable student loan obligation not a "special circumstance"); *In re Armstrong*, 2007 WL 1544591, at *4 (finding a married couple's legal separation a "special circumstance"); *In re Tranmer*, 355 B.R. 234, 250 (Bankr. D.Mont.2006) (finding high transportation expense for debtors' commute not a "special circumstance").

### *Plain Meaning*

▮ "The starting point of statutory construction is to begin 'with the words of the statutory provision.'" *Huff v. DeKalb County, Ga.*, 516 F.3d 1273, 1280 (11th Cir.2008) (*citation omitted*). The common usage of a word establishes its meaning in the absence of a statutory definition. *Id.* "Courts should read statutes as a 'consistent whole.'" *Id.*

Congress did not define the phrase "special circumstances," but provided two examples. The examples demonstrate the events giving rise to the additional expenses or adjustments of current monthly income must be extraordinary or exceptional. A "serious medical condition," as opposed to a "medical condition," and a "call or order to active duty in the Armed Forces" constitute special circumstances. Both examples are non-commonplace events that are beyond a debtor's control and significantly impact a debtor's financial situation.

Fundamental to a "special circumstances" analysis is the word "special." The common language definition of "special" is "distinguished from what is ordinary or usual; extraordinary, exceptional." Random House Webster's College Dictionary 1284 (1992). "Special" as defined by Black's Law Dictionary means "unusual;

---

**16.** The dollar figures in Section 707(b)(2)(B)(iv) did not adjust upwards pursuant to the Judicial Conference of the United State's adjustment on February 14, 2007.

extraordinary." BLACK'S LAW DICTIONARY 1253 (7th ed.1999).

The plain language surrounding the two examples further establishes the alleged "special circumstances" must be extraordinary or exceptional pursuant to the common meaning of "special." The debtor must establish the additional expenses or adjustments of income are such "for which there is no reasonable alternative" and they are "necessary and reasonable." 11 U.S.C. §§ 707(b)(2)(B)(i), 707(b)(2)(B)(ii)(II). The debtor must attest under oath they "are required." 11 U.S.C. § 707(b)(2)(B)(iii).

A debtor, in order to successfully rebut the presumption of abuse, must demonstrate, pursuant to the plain language of Section 707(b)(2)(B) and the examples provided by Congress, the circumstances giving rise to the additional expenses or adjustments of income are extraordinary or exceptional, are unexpected or involuntary, and substantially impact the debtor's financial situation.

### *Legislative History*

A statute's legislative history is relevant when the statute is ambiguous. *U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Section 707(b)(2)(B) is plain and unambiguous, but a review of the statute's legislative history confirms "special circumstances" must be extraordinary or exceptional and be of an involuntary or unexpected nature justifying granting a debtor preferential treatment.

"The authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill." *Eldred v. Ashcroft,* 537 U.S. 186, 209 n. 16, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003) *(citations omitted).* The 2005 Bankruptcy Code amendments, as established by the legislation's title ("Bankruptcy Abuse Prevention and Consumer Protection Act"), were intended to curb what was perceived to be abusive bankruptcy practices, and to ensure debtors with the ability to repay their debts do so. H.R. REP. No. 109–31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89.[17]

Congress created in BAPCPA a needs-based test to remedy the "inherently vague" "substantial abuse" dismissal standard of Section 707(b). *Id.* at 12, U.S.C.C.A.N. at 98. The needs-based test "permits the mandatory presumption of abuse to be rebutted only if: (1) the debtor demonstrates special circumstances justifying any additional expense...." *Id.* at 14, U.S.C.C.A.N. at 100. An amendment introduced by Senator Jeff Sessions (R–AL) clarified the "special circumstances" exception "includes a debtor with a serious medical condition or a debtor on active duty in the military...." *Id.* at 9, U.S.C.C.A.N. at 96.

The phrase "special circumstances" was first introduced in Senate Bill 625 in 1999 (Bankruptcy Reform Act of 1999). The "special circumstances" exception was intended to "protect debtors from rigid and arbitrary application of a means test...." S. REP. No. 106–49, at 6–7 (1999), 1999 WL 300934 at *6–7. The Report explains:

---

**17.** "The purpose of the bill [S. 256] is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors ... The heart of the bills' consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford."

[A] debtor who requests a special circumstances adjustment is requesting preferential treatment when compared to other consumers, and it is those other consumers who, by paying their debts, must assume the cost of the debts discharged by the debtors seeking preferential treatment. In order to ensure fairness . . . it is essential that the 'special circumstances' test establish a significant, meaningful threshold which a debtor must satisfy in order to receive the preferential treatment.

. . . .

The special circumstances provision must be reserved only for those debtors whose special circumstances require adjustments to income or expenses that place them in *dire need* of chapter 7 relief.

*Id.* (emphasis added).

### Conclusion

Both a reading of the plain unambiguous language of 11 U.S.C. Section 707(b)(2)(B) and the BAPCPA legislative history lead to the same result: A debtor asserting "special circumstances" in support of additional expenses or income adjustment must establish the circumstances are extraordinary or exceptional, are unexpected or involuntary, and place the debtor in dire need of Chapter 7 relief.

The Debtor has not established the additional expense claimed in Line 56a of her Means Test arises from a "special circumstance." Antenuptial agreements are commonplace in most jurisdictions, including Florida, and constitute private voluntary contracts between spouses. *In re Rosenstein's Estate,* 326 So.2d 239, 241 (Fla. 3d DCA 1976) ("Antenuptial agreements are contractual in nature and should be construed in the same manner as other types of contracts."). The Agreement is not an exceptional or extraordinary circumstance nor is it an unexpected or involuntary event justifying the Debtor's additional expense claim.

The Debtor is not in dire need of Chapter 7 relief. She has a meaningful ability to repay her debts. She has manipulated the means test in an attempt to obtain relief to which she is not entitled. The Debtor's case represents the perceived quintessential type of bankruptcy abuse Congress endeavored to eradicate through BAPCPA.

Granting the Debtor relief would be an abuse of the provisions of Chapter 7. She has not rebutted the presumption of abuse pursuant to 11 U.S.C. Section 707(b)(2)(B). Her case is due to be dismissed pursuant to 11 U.S.C. Sections 707(b)(1) and (b)(2).

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** that the UST's Motion to Dismiss is hereby **GRANTED** and the above-captioned case shall be **DISMISSED** pursuant to 11 U.S.C. Sections 707(b)(1) and (b)(2). The effective date of this Order is delayed fourteen (14) days to permit the Debtor to convert this case to Chapter 13.